2003 ME 27

**DAIMLERCHRYSLER SERVICES
NORTH AMERICA, LLC**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued: Nov. 13, 2002.
Decided: March 4, 2003.

Peter O. Larsen (orally), David E. Otero, Akerman, Senterfitt & Eidson, P.A., Jacksonville, FL, John M.R. Paterson, Nelson A. Toner, Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for plaintiff.

G. Steven Rowe, Attorney General, Thomas A. Knowlton, Asst. Attorney General (orally), Augusta, for defendant.

Jonathan A. Block, Pierce Atwood, Portland, for Maine Association of Community Banks and Maine Banker's Association, amici curiae.

Panel: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] DaimlerChrysler Services North America, LLC, appeals from a judgment entered in Superior Court (Kennebec County, *Studstrup, J.*) in favor of the State Tax Assessor denying DaimlerChrysler's claim for a refund or credit for sales tax under 36 M.R.S.A. § 1811–A (1990). The statute allows a credit to retailers for sales tax paid on financed items when the loan account is charged-off as worthless. We disagree with DaimlerChrysler's contention that it comes within the purview of section 1811–A, and we affirm the judgment of the Superior Court.

## I.  FACTS AND BACKGROUND

[¶ 2] DaimlerChrysler[1] financed retail vehicle purchases. For each transaction at issue here, at the time of the vehicle purchase, the seller entered into a retail installment contract with the purchaser, and the seller then assigned the contract, without recourse, to DaimlerChrysler. The amount financed was the purchase price and sales tax of the vehicle less any down payment and trade-in allowance. The seller was required to pay the vehicle sales tax to the State. 36 M.R.S.A. § 1953 (1990).

[¶ 3] When a purchaser failed to pay DaimlerChrysler the amount owing on the contract, DaimlerChrysler took steps to collect the debt, including letters, telephone calls, repossession, sale, and court action for a deficiency. When an amount was still owing on the contract, after all collection actions, DaimlerChrysler deter-

---

1. The use of the name "DaimlerChrysler" herein includes its predecessors. Chrysler Credit Corporation was merged into Chrysler Financial Corporation, which was subsequently merged into Chrysler Financial, LLC, and then became DaimlerChrysler.

mined the account to be worthless and charged-off the amount for internal accounting purposes as well as federal and state income tax purposes.

[¶ 4] DaimlerChrysler was registered as a retailer in 1995, and again registered as a retailer in 2001, but for the years between 1995 and 2001, DaimlerChrysler was not a registered retailer. Between 1995 and 2001, DaimlerChrysler did not file sales and use tax returns in Maine.

[¶ 5] In early 2000, DaimlerChrysler filed a claim with the State Tax Assessor for a refund of sales tax that had been paid on vehicle sales on accounts that DaimlerChrysler charged-off as worthless. The Assessor denied the request for the reason that DaimlerChrysler was not a retailer, and the Assessor subsequently denied DaimlerChrysler's request for reconsideration. DaimlerChrysler then brought a petition for judicial review, which was submitted to the court on stipulated facts and exhibits. In a well-reasoned decision, the Superior Court granted judgment for the Assessor.

## II. DISCUSSION

[¶ 6] The statute provides:

> The tax paid on sales represented by accounts charged off as worthless may be credited against the tax due on a subsequent report filed within 3 years of the charge-off, but, if any such accounts are thereafter collected by the retailer, a tax shall be paid upon the amounts so collected.

36 M.R.S.A. § 1811–A. Although the statute has been in existence since 1953, we have not been called upon previously to construe it.

■■■■ [¶ 7] We review de novo the Superior Court's conclusion of law as to the application of the statute. *Brent Leasing Co. v. State Tax Assessor,* 2001 ME 90, ¶ 4, 773 A.2d 457, 458. When interpreting a statute, we give effect to the intent of the Legislature by first looking at the plain meaning of the statutory language. *Foster v. State Tax Assessor,* 1998 ME 205, ¶ 7, 716 A.2d 1012, 1014. Furthermore, when a statute provides a tax credit, the person seeking the credit must show that it is "unmistakably within the spirit and intent of the statute." *Id.,* 1998 ME 205, ¶ 8, 716 A.2d at 1015.

■■■ [¶ 8] A plain reading of section 1811–A reveals that a person seeking a benefit from it must demonstrate: (1) a tax was paid on sales;[2] (2) the tax was paid on accounts that the person has charged-off as worthless; and (3) the charge-off was made within three years of filing a sales tax report. Furthermore, by its plain language the statute allows only for a credit. If the Legislature had intended to provide for a refund instead of a credit or in addition to a credit, it knew how to do so. It enacted 36 M.R.S.A. § 2906–A (1990), similar to section 1811–A, but relating to the gasoline tax paid on charged-off accounts, and section 2906–A provides for a refund. Because section 1811–A speaks only to a credit, and not to a refund, the relief provided in the statute is limited to a credit against tax that is due to the Assessor on a subsequent sales tax report.

**2.** We do not reach the Assessor's argument that DaimlerChrysler failed to prove that the sales tax was actually paid on the charged-off accounts. The stipulated facts do not state that the sales tax was paid. DaimlerChrysler argues that the court made a factual finding that the tax was paid, but it is unclear whether the court made that finding or was describing the background in more general terms. DaimlerChrysler has not alleged that it paid the sales tax on the vehicles.

[¶ 9] The issues presented in this case are whether the credit allowed by section 1811–A is limited to retailers, and, if so, whether DaimlerChrysler was a retailer for the accounts that are the subject of its claim. We first conclude that only the retailer who paid the sales tax can obtain the benefit of the statute. Our reasons for reaching this conclusion are several.

■ [¶ 10] First, the fact that the statute provides only for a credit, and does not permit the Assessor to refund the amount paid, demonstrates that it is limited to retailers because only retailers are in a position to take a credit against a tax owing on a subsequent report. Retailers are persons making sales, 36 M.R.S.A. § 1752(10) (Supp.2002), and they are required to collect taxes from sales and to report monthly on all sales made during the preceding month, *id.* § 1951–A(1). Thus, retailers are persons who have tax liabilities against which a credit can be taken.

[¶ 11] A second reason to interpret section 1811–A to limit its relief to retailers is the requirement that the credit be taken "on a subsequent report." The report referred to in section 1811–A is obviously the monthly report required to be filed by retailers pursuant to section 1951–A. Non-retailers do not file "subsequent" reports. Furthermore, the use of the phrase "on a subsequent report" means that the person who can claim a credit is limited to the retailer who filed the initial report showing payment of the sales tax for the vehicle, which is the same retailer who paid the sales tax to the State.

■ [¶ 12] Another reason for interpreting section 1811–A to limit its relief to retailers is the use of the word "retailer" in one clause and the use of the passive voice in the verbs in all of the clauses. When a statute is drafted in the passive voice, it can be difficult to determine whom the Legislature intended as the actor. *See United States v. Wilson,* 503 U.S. 329, 334–35, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992) (finding uncertain who was to give a defendant credit for time served when the statute only provided that the defendant "shall be given credit"). Such an ambiguity can sometimes be resolved by viewing the statute in its entirety. *See E.I. du Pont de Nemours & Co. v. Train,* 430 U.S. 112, 128, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977) (resolving identification of actor when statute utilized passive voice by viewing other portion of statutes which identified actor); *Lehrfeld v. Richardson,* 132 F.3d 1463, 1465–66 (D.C.Cir.1998) (same). Any ambiguity in section 1811–A created by the use of the passive voice can be resolved by reviewing the entire statute. The only actor recited in the statute is the "retailer," and, thus, a logical and reasonable interpretation is that the Legislature intended the "retailer" to be the actor for all of the verbs. Thus, the statute can be read as follows:

> The tax paid [by the retailer] on sales represented by accounts charged off [by the retailer] as worthless may be credited [by the retailer] against the tax due on a subsequent report filed [by the retailer] within 3 years of the charge-off, but, if any such accounts are thereafter collected by the retailer, a tax shall be paid [by the retailer] upon the amounts so collected.

■ [¶ 13] To the extent that the passive verbs create an ambiguity as to whether the statute is limited to retailers, we can also look to the long-standing and consistent interpretation given to the statute by the Maine Revenue Service. *See Guilford Transp. Indus. v. Pub. Utils. Comm'n,* 2000 ME 31, ¶ 11, 746 A.2d 910, 913. In its instruction bulletins issued since 1958, the Maine Revenue Service has construed the statute as limiting the credit

to the retailer who paid the sales tax. When a statute is ambiguous we defer to the interpretation of the agency charged with the statute's administration so long as that construction is reasonable. *Id.* For the same reasons we have given above as to why the statute must be interpreted to restrict its relief to retailers, we find the agency's interpretation to be reasonable.[3]

■ [¶ 14] DaimlerChrysler argues that even if section 1811–A is limited to retailers, it still comes within the terms of the statute because it is the assignee of the retailer, and by virtue of the assignment of the financial accounts to it by the original retailer, it has stepped into the shoes of the retailer and can therefore claim a credit. However, the assignment to DaimlerChrysler did not purport to assign any statutory rights of the seller to a tax credit. By its own terms the assignment gave DaimlerChrysler only the rights of the seller "in and to this contract."[4] We do not interpret the seller's statutory right to a potential tax credit to be a right "in and to this contract."[5]

■ [¶ 15] DaimlerChrysler contends that the common law of assignment is applicable, and the common law grants the statutory rights of the assignor to the assignee. We agree with the Tennessee Court of Appeals that principles governing the interpretation of tax credit and exemption statutes should overcome more general assignment law. *SunTrust Bank, Nashville v. Johnson,* 46 S.W.3d 216, 226–27 (Tenn.Ct.App.2001). Tax credits are conferred by legislative grace and are not assignable as a contractual right in the absence of either explicit contractual or statutory language.

■ [¶ 16] DaimlerChrysler also argues that it is a retailer because it comes within the statutory definition of "retailer." A "retailer" is any person who makes retail sales, 36 M.R.S.A. § 1752(10), and the definition of "person" includes an "assignee," *id.* § 1752(9) (1990). Thus, the word "assignee" can be substituted for the word "person" in the definition of "retailer." However, that substitution does not assist DaimlerChrysler because it makes a "retailer" any "assignee who makes retail sales."[6] There are no facts in this record

---

**3.** Another reason suggested by the Assessor for the reasonableness of the Assessor's interpretation that section 1811–A is limited to retailers has to do with the likelihood that the Legislature did not intend to impose additional workload on an administrative agency. Specifically, an element that must be proven by the retailer in claiming a tax credit is that the sales tax was actually paid. The retailer who paid the tax can demonstrate the payment by use of records that it is likely to possess, but a third party may need a record search by the Maine Revenue Service to prove the payment of the sales tax.

**4.** Another basis for determining that the right to a statutory tax credit is not assignable is that the assignor did not possess the right to a credit at the time of the assignment. *See Dep't of Revenue v. Bank of Am.,* 752 So.2d 637, 642 (Fla.Dist.Ct.App.2000) (holding that the bank assignee of a vehicle installment sales contract was not entitled to a refund or

credit for sales tax under the Florida bad debt statute).

**5.** Even if DaimlerChrysler could be considered a retailer because of its status as an assignee, it has not demonstrated that it has filed a sales tax report showing a tax liability against which it could take a credit for the charged-off accounts. As stated above, only retailers who owe a tax liability and file a sales tax report can obtain the benefit of the statute. On this record there is no evidence of any sum owing by DaimlerChrysler to the Assessor against which a credit can be taken. Although DaimlerChrysler argues in its brief that it has a present tax liability to the Assessor against which a credit could be taken, there are no facts in the stipulated record to support that assertion.

**6.** This is the position taken by the three judges dissenting in *Puget Sound National*

showing that DaimlerChrysler made retail sales, and, therefore it cannot come within the definition of retailer.

The entry is:

Judgment affirmed.

*Bank v. Department of Revenue,* 123 Wash.2d 284, 868 P.2d 127, 133 (1994) (Utter, J., dissenting), which we find more persuasive than the four-judge majority holding that the as- signee bank was entitled to a refund under the Washington statute that is similar to, but broader than, section 1811–A.